```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 08-21017-Civ-GRAHAM
                              MAGISTRATE JUDGE P.A. WHITE
```

DANIEL TREVINO,                  :

    Plaintiff,               :

v.                               :         REPORT OF
                                          MAGISTRATE JUDGE
ROGER BROWNE, M.D., and          :
RICKY ROWE, L.P.N.,
                                          :

    Defendants.
_____:

## I.  Introduction

      Daniel Trevino filed a pro se civil rights complaint pursuant to 42 U.S.C. §1983, alleging inadequate medical care regarding a detached retina received at his former place of incarceration, Everglades Correctional Institution, which is located in the Southern District of Florida. (DE# 1). Trevino names as defendants Dr. Roger Browne, the Chief Health Officer at the Everglades Correctional Institution at the time of the events alleged, and Licensed Practical Nurse Ricky Rowe. Id. The plaintiff is proceeding in forma pauperis. (DE# 6). Upon review of the Complaint for initial screening pursuant to 28 U.S.C. §1915, the undersigned recommended in a preliminary report that the claim of denial of proper medical care proceed against defendants Browne and Rowe in their individual capacities. (DE# 8). The report was adopted by the Honorable Donald L. Graham, United States District Judge. (DE# 17). Defendant Rowe was personally served by the United States Marshal on May 21, 2008. (DE# 12). Attempts to accomplish service

upon Defendant Browne proved unsuccessful.[1] See DE# 13, 14, 15, 16, 24, 25.

The plaintiff alleges in his Complaint that in January 2005, Rowe was aware that his left eye was swollen and painful, but he refused to provide any care other than a cursory reading examination. Id. The plaintiff further alleges that several days later, Browne simply walked to his confinement cell, looked at his eye and concluded that there was no problem. Id. The plaintiff states that he subsequently was required to have surgery to repair a detached retina and he has lost 60 percent of the vision in the eye, which may have been avoided had Browne or Rowe not ignored the serious symptoms and referred him to an optometrist. Id. The plaintiff claims that Rowe was "belligerent" and Browne chastised him, stating the plaintiff only wanted to get out of his confinement cell. Id.

This Cause is now before the Court upon the competing motions for summary judgment. Pro se Plaintiff Trevino filed a Motion for Summary Judgment, made under the penalty of perjury, with supporting brief. (DE# 40, 41). Defendant Ricky Rowe filed a response thereto with supporting medical records and affidavit. (DE# 48, 48-1, 48-2). Defendant Ricky Rowe also filed a Motion for Summary Judgment and memorandum with supporting medical records and affidavits executed by Rowe and Doris Alexander, an Advanced

---

[1] Review of the record in this case appears to indicate that Defendant Browne is no longer residing in the State of Florida and he may be incarcerated in the State of Kentucky. (DE# 13). It is noted that after the first attempt to obtain service failed, a Second Order Re Service of Process Requiring Personal Service Upon an Individual was entered on November 8, 2008, requiring the United States Marshal to serve Defendant Browne with a copy of the complaint and summons at a newly obtained address. (DE# 25). The summons was issued on the same date. (DE# 26). No return of service has been filed by the United States Marshal. The plaintiff has not, as is his responsibility, pursued the issue regarding service upon this defendant and it appears as if he has elected not to pursue any claim against Defendant Browne.

Registered Nurse Practitioner. (DE# 44, 45, 45-1, 45-2, 45-3). Trevino has also submitted a pleading entitled, "Statement of Undisputed Facts." (DE# 42). This Statement does not contain a list of undisputed facts; rather, it essentially repeats the facts raised in the complaint as set forth above. Both Plaintiff Trevino and Defendant Rowe have filed a Pretrial Statement. (DE# 43, 49).

## II. Discussion

### A. The Law of Summary Judgment

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper:

> [I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of a law.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against:

> [A] party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (Citation omitted).

Thus, pursuant to *Celotex* and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for the motion by identifying those portions of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. Hoffman v. Allied Corp., 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial

3

burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11 Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir. 1990).

The non-moving party, even a *pro se* prisoner, cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial. Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714 (11 Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987). If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). Despite the liberality with which courts are obliged to interpret pro se complaints, "a pro se litigant does not escape the essential burden under summary judgment standards of establishing that there is a genuine issue as to a fact material to his case in order to avert summary judgment." Brown v. Crawford, 906 F.2d 667, 670 (11 Cir. 1990).

On June 10, 2009, an Order was entered informing the plaintiff that as a *pro se* litigant it is his right to respond to an opposing party's motion for summary judgment, and instructing him regarding the requirements under Rule 56 for a response to such a motion. See

4

Order Instructing <u>Pro Se</u> Plaintiff Concerning Response To Motion For Summary Judgment). (DE# 47). The plaintiff has not filed a response to Defendant Rowe's motion for summary judgment, but earlier filed his own motion for summary judgment with supporting memorandum of law. (DE# 40, 41).

### B. <u>Law Relating to Inmate Medical Claims</u>

The Eighth Amendment governs the conditions under which convicted prisoners are confined and the treatment they receive while in prison. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (*quoting* <u>Helling v. McKinney</u>, 509 U.S. 25, 31 (1993)); <u>Campbell v. Sikes</u>, 169 F.3d 1353, 1362 (11 Cir. 1999). The Eighth Amendment's prohibition on cruel and unusual punishment imposes a duty on prison officials to provide prisoners with "humane conditions of confinement," which includes adequate medical care. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832-34 (1994). It is a prison official's deliberate indifference to an inmate's serious medical need that constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976). <u>See also</u> <u>Farrow v. West</u>, 320 F.3d 1235, 1242 (11 Cir. 2003). Whether an inmate's medical need requires attention as a matter of constitutional right depends upon its severity. <u>See</u> <u>Estelle</u>, 429 U.S. at 104-06. Generally, a serious medical need is considered "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." <u>Farrow</u>, 320 F.3d at 1243 (*quoting* <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11 Cir. 1994)).

In *Estelle*, the Supreme Court reasoned that "an inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met." <u>Id.</u>, 429

U.S. at 103. Deliberate indifference can be established by evidence that necessary medical treatment has been withheld or delayed for nonmedical or unexplained reasons. Farrow, 320 F.3d at 1247 (finding jury question on issue of deliberate indifference because of unexplained fifteen-month delay in treatment). The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay. Harris v. Coweta County, 21 F.3d 388, 393-94 (11 Cir. 1994). A plaintiff may also establish deliberate indifference with evidence of treatment "so cursory as to amount to no treatment at all." Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 704 (11 Cir. 1985). If prison officials delay or deny access to medical care or intentionally interfere with treatment once prescribed, they may violate the Eighth Amendment. Estelle, 429 U.S. at 104.

Title 42 U.S.C. Section 1983, requires an affirmative causal connection between an official's acts and an alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11 Cir. 1995); Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11 Cir. 1995). Negligence is not enough,[2] and a mere difference of opinion between an inmate and prison medical staff concerning his diagnosis and course of treatment does not rise to the level of a constitutional deprivation.[3] Thus, it is well settled that a showing of mere

---

[2] It is well settled that a showing of mere negligence, neglect, or even medical malpractice is insufficient to recover on a §1983 claim. A showing of conscious or callous indifference is required. Estelle v. Gamble, 429 U.S. 97, 104-06 (1976); Daniels v. Williams, 474 U.S. 327 (1986); Farrow v. West, 320 F.3d 1235, 1243 (11 Cir. 2003); Brown v. Hughes, 894 F.2d 1533, 1537-38 (11 Cir. 1990); Washington v. Dugger, 860 F.2d 1018, 1021 (11 Cir. 1988).

[3] The Courts have long recognized that a difference of opinion between an inmate and prison medical staff regarding medical matters, including the diagnosis or treatment which the inmate receives, cannot in itself rise to the level of a cause of action for cruel and unusual punishment, and have consistently held that the propriety of a certain course of medical treatment is not a proper subject for review in a civil rights action. Estelle, supra, at 107

negligence, neglect, or medical malpractice is insufficient to recover on a §1983 claim. Estelle, supra; Adams v. Poag, 61 F.3d 1538 (11 Cir. 1995). In fact, once an inmate has received medical care, courts are hesitant to find that a constitutional violation has occurred. Hamm v. DeKalb County, 774 F.2d 1567, (11 Cir.), cert. denied, 475 U.S. 1096 (1986).

Treatment violates the Eighth Amendment only if it involves "something more than a medical judgment call, an accident, or an inadvertent failure," Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5 Cir. 1980). It must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Harris v. Thigpen, 941 F.2d 1495, 1505 (11 Cir. 1991). In order to show an objectively serious deprivation of medical care, the inmate must demonstrate: 1) an objectively serious medical need that, left unattended, poses a serious risk of harm; 2) that the response made by public officials to that need was poor enough to constitute an "unnecessary and wanton infliction of pain," and not merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law; and 3) an attitude of deliberate indifference, which shows that the defendants were aware of the facts from which a substantial risk of serious harm could be inferred, *and that they*

---

("matter[s] of medical judgment" do not give rise to a §1983 claim). See Ledoux v. Davies, 961 F.2d 1536 (10 Cir. 1992)(inmate's claim he was denied medication was contradicted by his own statement, and inmate's belief that he needed additional medication other than that prescribed by treating physician was insufficient to establish constitutional violation); Ramos v. Lamm, 639 F.2d 559, 575 (10 Cir. 1980) (difference of opinion between inmate and prison medical staff regarding treatment or diagnosis does not itself state a constitutional violation), cert. denied, 450 U.S. 1041 (1981); Smart v. Villar, 547 F.2d 112, 114 (10 Cir. 1976) (same); Burns v. Head Jailor of LaSalle County Jail, 576 F.Supp. 618, 620 (N.D. Ill. E.D. 1984)(exercise of prison doctor's professional judgment to discontinue prescription for certain drugs not actionable under §1983).

*actually did draw that inference*. Taylor v. Adams, 221 F.3d 1254, 1258 (11 Cir. 2002).

As the Eleventh Circuit in *Campbell* observed, the Supreme Court in Wilson v. Seiter, 501 U.S. 594 (1991), and later Farmer v. Brennan, supra, "refined the inquiry" regarding satisfaction of the subjective element required for an Eighth Amendment deprivation. Campbell, 169 F.3d at 1363. The Supreme Court explained in *Wilson*, that the Eighth Amendment applies only to punishments, and that prison conditions are only punishment if a mental element of punitive intent is shown, Wilson, 501 U.S. at 300 ("If the pain inflicted is not formally meted out as punishment by the statute or the sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify"). In *Farmer*, the Court provided further explanation of the mental state that is required for deliberate indifference, Farmer, 511 U.S. at 837-38 (holding that a prison official cannot be found liable under the 8th Amendment for denying an inmate humane conditions unless he knows of and disregards an excessive risk to inmate health or safety; and the defendant official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also have drawn the inference). As the Eleventh Circuit has noted post-*Farmer*, proof that the defendant should have perceived the risk, but did not, is insufficient. Campbell supra, at 1364 (*citing* Farmer, 511 U.S. at 838); Cottrell v. Caldwell, 85 F.3d 1480, 1491 (11 Cir. 1996)(the official must have a subjectively "'sufficiently culpable state of mind,'" and "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not...'") (*quoting* Farmer, 511 U.S. at 838). Thus, liability may be imposed for deliberate indifference only if the plaintiff proves the

8

defendant actually knew of "an excessive risk to inmate health or safety" and disregarded that risk. Campbell, supra, at 1364 (*citing* Farmer, 511 U.S. at 837).

### C.  The Competing Motions for Summary Judgment

Plaintiff Trevino has filed a pro se motion for summary judgment, claiming that he was denied adequate medical care for his serious medical need and that failure to provide him such care constituted deliberate indifference, resulting in an Eighth Amendment violation. (DE# 40, 41). Specifically, he alleges that Nurse Rowe examined his eye in January or February 2005, and stated that there was nothing medically wrong with it and then failed to schedule him for examination by a prison doctor before February 2, 2005. In his motion, Plaintiff Trevino refers to and relies on his prison medical records as support for his motion. Id. He has, however, not supplied this Court with any such records or any other documentary exhibits or affidavits. Id. Defendant Rowe argues in his competing motion for summary judgment that the record is devoid of any evidence showing that he exhibited deliberate indifference to Trevino's serious medical needs.[4] (DE# 45). Defendant Rowe has supported his motion with the prison medical records and affidavits. (DE# 45-1, 2, 3). In response to Plaintiff Trevino's motion for summary judgment, Defendant Rowe essentially repeats the claims raised in his motion for summary judgment and he supports his argument with the same medical records and his own affidavit.

---

[4]Defendant Rowe asserted as an affirmative defense in his Answer that plaintiff had not fully exhausted his available administrative remedies before filing suit in federal court, as required under 42 U.S.C. §1997e(a), which is the administrative exhaustion requirement of the Prison Litigation Reform Act of 1995 (PLRA). (DE# 30). He has also sought summary judgment on this basis. (DE# 45). While it appears that the plaintiff may have not fully completed the administrative review process, since an award of summary judgment is appropriate on the alternate basis that there are no genuine issues of material fact showing that defendant Rowe exhibited deliberate indifference to the plaintiff's serious medical needs, this alternate argument need not be analyzed and it need not be determined whether plaintiff's medical claims are barred by §1997e(a).

(DE# 48, 48-1, 48-2). Plaintiff Trevino has filed no response whatever to Rowe's motion for summary judgment.

The record demonstrates that in November 2004, while Trevino was confined at Everglades CI, he began to experience problems with his left eye, resulting in headaches, pain, redness, swelling and blurred vision. See Complaint at 3. (DE# 1). On January 8, 2005, he allegedly signed up for sick-call but was not seen that day. Id. After waiting for several days, he allegedly signed up again. Id. Trevino alleges that he was then given a cursory eye examination by confinement nurse defendant Rowe, which consisted of reading an eye chart, after which he was told that there was nothing wrong with his eye. Id. See also Brief in Support of Plaintiff's Motion for Summary Judgment at 5. (DE# 41). Trevino alleges that Nurse Rowe did not prescribe pain medication, eye drops or any type of medication and did not schedule an appointment for him with a prison doctor or outside optometrist. See also Brief in Support of Plaintiff's Motion for Summary Judgment at 5-6. (DE# 41). Plaintiff alleges that on the third sick call, he was seen by defendant Browne while Browne was making rounds in the confinement area of the institution and Browne merely viewed his eye from the door of his cell and stated that there was nothing wrong with his eye. See Complaint at 4. See also Brief in Support of Plaintiff's Motion for Summary Judgment at 5. (DE# 41).

The medical records submitted by Defendant Rowe indicate as follows. On January 28, 2005, Trevino was seen in confinement by Christina Perez, M.S., a behavioral health specialist. (DE# 45-1 at 1). No mention was made of a medical issue with regard to his eye. Id. On February 2, 2005, complaining of blurred vision, Trevino was examined by staff physician Carl Balmir. Id. Dr. Balmir concluded that Trevino suffered from a partial vision loss and required an

optometry evaluation "ASAP." Id. On that date, Dr. Balmir completed a Consultation Request, requesting that Trevino be examined by optometry for his symptoms of blurry vision, reading difficulty and partial loss of peripheral vision. Id. at 2-3. Eight days later, on February 10, 2005, in preparation for his transfer to Century CI, a Health Information/Transfer Summary was prepared at Everglades CI by Lynn Noel, LPN and no medical issue regarding his eye was noted. Id. at 4. The sole then-current medical issue listed was degenerative joint disease in his ankles. Id. Pre-Special Housing Health Appraisals conducted on February 11 and February 14, 2005, by staff members I. Petit-Homme and C. Kinchen, LPN, indicated that Trevino had no current medical complaint. Id. at 5-6, 7. The earlier form did note that a special appointment had been scheduled for February 16, 2005. Id. at 5. During the third Pre-Special Housing Health Appraisal conducted by B. Chavers, RN on February 15, 2005, after Trevino had been transferred to Century CI, Trevino stated that his left eye had been blurry for 7 weeks. Id. at 8-10. Nurse Chavers referred Trevino to sick call for the following morning. Id. at 10.

On February 16, 2005, Trevino reported for sick call and he received a visual acuity examination by K. Gatewood, S.R.N. Id. at 11. Based upon the examination, Nurse Gatewood concluded that Trevino should receive a medical evaluation of his left eye. Id. at 11. Nurse Gatewood noted that on January 28, 2005, the staff physician at Everglades CI had requested an optometry consultation. Id. On March 15, 2005, a request was made for Trevino to be examined by a retinal specialist for the debris found in the posterior chamber of his left eye which was causing the decrease in vision. Id. at 13. On April 1, 2005, Trevino was examined by ophthalmologist Dr. Staman and he was diagnosed with retinal detachment of the left eye and angle recession. Id. at 12, 14. On

11

May 2, 2005, at Memorial Medical Center of Jacksonville, Dr. Staman successfully performed a surgical procedure, a vitrectomy, to repair the detached retina. Id. at 15-7.

Approximately six months later, on November 9, 2005, Trevino was examined at Columbia Eye Associates by ophthalmologist Dr. Karl D. Bodendorfer for his complaints of blurred vision, post-operative retinal surgery and a possible cataract. Id. at 18-20. Dr. Bodendorfer's examination revealed that Trevino's uncorrected vision in his right eye was 20/30 and was 20/200 +1, and that cataract surgery was required. Id. at 18-25. The surgery was performed November 22, 2005, and Trevino was doing well as determined on his follow-up visit. Id. at 25-7. On a subsequent evaluation conducted by Dr. Bodendorfer on December 20, 2006, during which Trevino continued to complain of blurred vision, it was concluded that a laser capsulotomy, cataract surgery, was again needed on the left eye and such procedure was performed on that date. Id. at 26-8.

Besides the above-reviewed medical records, defendant Rowe has submitted two supporting affidavits. See Affidavit of Ricky Rowe, L.P.N. and Affidavit of Doris Alexander, M.S.N., A.R.N.P. (DE# 45-2, 45-3). Affiant Rowe states in his affidavit that he has no recollection of completing an eye examination for Trevino between January 8, 2005, and February 2, 2005, and that if he had done so, he would have documented that examination in the medical record. (Affidavit of Ricky Rowe executed on June 5, 2009, at ¶¶3, 5)(DE# 45-2). He further avers that he is not aware of any medical records that indicate that he performed any eye examination for Trevino and that he is not authorized to order an optometry consultation for any patient, only a prison doctor could order such a consultation.

Id. at ¶¶4, 7). He denies delaying any request made by Trevino to see a prison doctor. Id. at ¶6.

Defendant Rowe's second supporting affidavit is from Doris Alexander. (Affidavit of Doris Alexander with attached curriculum vitae executed on June 2, 2009)(DE# 45-3). The affiant is an Advanced Registered Nurse Practitioner who is licensed in the State of Florida and who regularly engages in the practice of nursing in the State of Florida. Id. at ¶2. She states that in her clinical practice, she has completed numerous eye examinations. Id. at ¶4. The affiant further states that she has reviewed the medical records pertaining to Trevino, which include (1) his medical records from Everglades CI from January 1, 2004, to February 11, 2005; (2) his medical records from Century CI from February 11, 2005, to November 12, 2008; (3) the medical records prepared by ophthalmologist Dr. James Staman; (4) the medical records prepared by ophthalmologist Dr. Karl Bodendorfer; and (5) the progress notes of Dr. Bodedorfer. Id. at ¶5. Alexander avers that based upon her training, education, knowledge and experience, and review of Trevino's pertinent medical records, she has formed several opinions. Id. at ¶6. These opinions are in relevant part as follows:

> A. ...[T]he medical records do not document any examination by Nurse Rowe in either January 2005 or February 2005.
>
> \*   \*   \*
>
> F.   The medical records from Everglades Correctional Institution from 2005 do not reflect that Nurse Rowe ever participated in the care and treatment of Mr. Trevino.
>
> G.   The medical records do not reflect that Nurse Rowe provided any unreasonable care to Mr. Trevino in 2005.
>
> H.   Without the benefit of any medical records to the contrary, it appears that Nurse Rowe was not involved in the care and/or treatment of Mr. Trevino.

13

>    I.  The medical record does not substantiate the allegations against Nurse Rowe in Mr. Trevino's complaint. As such, it appears that the allegations against Nurse Rowe did not hamper Mr. Trevino's recovery or resulted in any permanent injury or disfigurement.
>
>    J.  Additionally, Mr. Trevino claims Nurse Rowe failed to schedule Mr. Trevino to see the prison doctor. Again, the medical records do not substantiate Plaintiff's claim in this regard. Note, Mr. Trevino was evaluated by Staff Physician, Carl Balmir, M.D. on February 2, 2005.

Id. ¶6.

For purposes of the motions for summary judgment and this Report, the plaintiff's detached retina, which was diagnosed after his transfer from Everglades CI, caused him discomfort, and ultimately required surgery, and is appropriately deemed a serious medical need. See Farrow, supra and Hill, supra. For defendant Rowe to be liable based on plaintiff Trevino's claim that his serious medical needs were ignored, however, Trevino would be required to show deliberate indifference. This, he has not done.

The documentary exhibits, consisting of Trevino's pertinent prison medical records and medical records from outside physicians, and sworn affidavits submitted by defendant Rowe and Advanced Registered Nurse Practitioner Doris Alexander demonstrate that Trevino was not seen in sick call between January 8, 2005, and February 2, 2005, by defendant Rowe. There is no evidence whatever that Trevino was ever examined by Nurse Rowe during this time period. Trevino has not responded to defendant Rowe's motion for summary judgment. Although he has filed his own motion for summary judgment, in his motion he merely makes the same allegations made in his complaint and has not supported his motion with evidentiary material, such as affidavits from others, conflicting prison medical records, depositions or otherwise to show that there are material issues of fact which require a trial. He has, therefore,

failed to meet his burden to overcome the granting of summary judgment on behalf of defendant Rowe. In the absence of genuine issues as to any material fact, defendant Rowe is entitled to summary disposition of the complaint against him. See Fed.R.Civ.P. 56(e); Celotex Corp. v. Catrett, supra. See also Brown v. Crawford, 906 F.2d 667, 670 (11 Cir. 1990); Coleman v. Smith, 828 F.2d 714 (11 Cir. 1987); Brown v. Shinbaum, 828 F.2d 707 (11 Cir. 1987).

Even if, assuming *arguendo*, that Nurse Rowe had conducted a cursory examination as Trevino alleges, there has been no showing of deliberate indifference to Trevino's serious medical needs by defendant Rowe. At the time of any such examination, there is no indication in the record that Trevino suffered from a known serious medical condition, warranting immediate examination by a staff physician or optometrist or that an opthomologic examination was required before January 28, 2005.

In other words, plaintiff Trevino has failed to demonstrate that this is a case in which Defendant Rowe, based on facts known to him, perceived that Trevino would be at risk of serious harm if he did not act differently than he did, and that having come to such a conclusion that Trevino would be harmed if no immediate action was taken, he nonetheless failed to act and such failure hampered Trevino's recovery or resulted in any permanent injury or disfigurement. Thus, plaintiff Trevino is not entitled to recover under §1983. Estelle, 429 U.S. at 104-06; Farrow v. West, 320 F.3d at 1243; Brown v. Hughes, 894 F.2d at 1537-38; Washington v. Dugger, 860 F.2d at 1021. See Farmer v. Brennan, supra, 511 U.S. at 837, 838; Campbell v. Sikes, 169 F.3d at 1364; Cottrell v. Caldwell, 85 F.3d at 1491. Based on these facts, and the limited nature of plaintiff's encounter with Nurse Rowe, the record does not indicate deliberate indifference on Nurse Rowe's part. Nurse

Rowe's conduct here at most involved a mere medical judgment call or an inadvertent failure or negligence. His conduct was not so grossly incompetent or inadequate to shock the conscience or to be intolerable to fundamental fairness. See Harris v. Thigpen, 941 F.2d at 1505; Murrell v. Bennett, 615 F.2d at 310 n.4. As pointed out by defendant Rowe, while still confined at Everglades CI, Trevino did in fact receive an examination with Dr. Balmir on February 2, 2005, less than twenty-five days after January 8, 2005, and that someone scheduled that appointment on his behalf. It was that appointment which ultimately resulted in the needed surgical treatment. Plaintiff's medical claim should, therefore, be summarily dismissed.

### III. Conclusion

Based upon the foregoing, it is recommended that: (1) the motion for summary judgment filed by plaintiff Trevino (DE# 40) be DENIED; (2) the motion for summary judgment filed by defendant Rowe (DE# 44) be GRANTED; and (3) this case be closed.[5]

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 28th day of January, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

---

[5] As indicated herein, service of process has not been accomplished as to defendant Browne and Trevino has not actively pursued his claim against him. However, it is noted that even if he were a proper defendant in this action, plaintiff Trevino would not prevail against defendant Browne. For the same or substantially the same reasons that defendant Rowe is entitled to an award of summary judgment, based upon the record before this Court, defendant Browne would be entitled to an award of summary judgment. There is no viable Eighth Amendment claim against either defendant. Accordingly, the instant case should be closed as to both defendants.

```
cc:   Daniel Trevino, Pro Se
      No. 220956
      Century Correctional Institution
      400 Tedder Road
      Century, FL 32535-3655

      Jeremy Thomas Palma, Esq.
      Rissman, Barrett, Hurt et al.
      201 E. Pine Street
      15th Floor
      PO Box 4940
      Orlando, FL 32802-4940

      Jason Daniel Sammis, Esq.
      Sammis Law Firm
      1005 N. Marion Street
      Tampa, FL 33602
```